# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

UNITED STATES OF AMERICA,

                Plaintiff,     :     Case No. 1:13-cr-052
                                               Also 1:15-cv-045

                                               District Judge Susan J. Dlott
- vs -                                    Magistrate Judge Michael R. Merz

SEAN P. CASEY,

                Defendant.     :

## REPORT AND RECOMMENDATIONS

      This case is before the Court on Petitioner's Motion to Vacate under 28 U.S.C. § 2255 (Doc. No. 61).  After District Judge Dlott referred the case to the undersigned (Doc. No. 63), Casey filed an Amended Motion to Vacate (Doc. No. 65).  Upon the Court's Order (Doc. No. 66), the United States has filed a Response (Doc. No. 72).  In the order for Answer, the Court set a date for Casey to file a reply twenty-one days after the Government's answer (Doc. No. 66, PageID 284).  That time has expired and no reply has been filed.

      Casey pleads one ground for relief:

            **Ground One:**  Ineffective Assistance of Counsel:  Invalid
            Stipulation of Loss Calculation

1

> **Supporting Facts:** Counsel's erroneous advice to enter into a stipulation of loss (1) when there was no actual loss and (2) to an amount that included funds not related to the charged offense rendered the stipulation unknowing and involuntary. Absent counsel's faulty advice, the Petitioner would not have entered into the agreement; his sentence was erroneously enhanced as a result of the faulty stipulation.

(First Amended Motion, Doc. No. 65, PageID 264.)

Procedural History

A grand jury for this District indicted Casey on May 15, 2013, on one count of conspiracy to commit wire fraud (Count One), one count of wire fraud (Count Two), and one count of unauthorized use of an access device (Count Three)(Indictment, Doc. No. 3). On October 4, 2013, Casey entered into a Plea Agreement with the United States in which he agreed to plead guilty to Count One (Doc. No. 24). The parties agreed the total amount of loss would be determined by the Court "after the completion of the pre-sentence investigation." *Id.* at PageID 103, ¶ 7. Chief Judge Dlott accepted Casey's guilty plea pursuant to the agreement on the same day.

In his Sentencing Memorandum, while admitting that he had made false statements to the two credit card processors involved in the case, they suffered no actual losses and indeed received substantial funds as a result of working with Casey (Doc. No. 42, PageID 153). The United States initially asked for a sentence of twenty-seven months, which was at the low end of the 27-33 month advisory guideline range calculated by the Probation Department (United States Sentencing Memorandum, Doc. No. 45, PageID 183). However, on the date that document was filed, Casey's lawyer orally offered "to stipulate the loss amount is between $200,000 and $400,

000.  This loss amount would result in a sentencing guideline range of 21-27 months based on an adjust [sic] offense level of 16.  In the interest of judicial economy, the United States does not object to this estimation or adjusted offense level." *Id.* at 183-84.  At sentencing Casey withdrew his objection to the Probation Department's loss calculation on agreement with the United States reflected in the U.S. Sentencing Memorandum (Transcript, Doc. No. 68, PageID 289).  Judge Dlott sentenced him to twenty-one months imprisonment (Judgment, Doc. No. 55).  Casey took no appeal.

## Analysis

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.  In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice.  *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S. 111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

3

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally* Annotation, 26 ALR Fed 218.

Casey recognizes this governing standard. He claims his trial attorney performed deficiently in advising him that he was "liable for a loss calculation under section 2D1.1 of the [Sentencing] Guidelines – and the corresponding enhancement to his sentencing range – even though no individual or entity suffered any actual loss." (First Amended Motion, Doc. No. 65, PageID 277.) He alleges a further deficient performance in counsel's advice "to stipulate that the calculation of gain he received from his offense of conviction should include cash receipts he deposited directly to his corporate accounts." *Id.* at PageID 279.

In the Statement of Facts in support of the conviction, Casey admitted making false statements to Elavon Corporation and First Data Merchant Services Corporation when applying

4

to have these companies process credit card charges from his Naughty Bodies business (Doc. No. 25, PageID 108). The actual business involved was an exotic dancer/stripper business, but Casey represented to Elavon that he was in the business of providing singing telegrams, clowns, etc. *Id.* To First Data he misrepresented the business as a disc jockey service and a limousine business. *Id.*

In the PSR, the Probation Officer reported that "[i]f a customer [of Naughty Bodies] used his credit card and later denied the charge for any reason, funds would be returned to the originating credit card. The company handling the merchant agreement would then list that as a 'chargeback.'" (PSR, ¶ 33.) Attached to the Statement of Facts is an eleven-page list of chargebacks which Casey attempted to justify by listing various services consistent with his original application (except for two were listed as exotic dancers) (Doc. No. 25-1). Interviews with several of the customers on the chargebacks did not receive services consistent with the original application. Thus the document attempting to justify the charges was also fraudulent.

The PSR calculates Casey's gain as a result of his criminal conduct at $425,658.79. *Id.* at ¶ 40. It expressly found that "none of the financial institutions suffered an actual loss in this case." *Id.,* see also ¶ 41. Instead, the PSR relied on Application Note 3(B) which provides that "the Court shall use the gain that resulted from the offense as an alternative measure of loss only if there is a loss but it reasonably cannot be determined." *Id.* at ¶ 49.

Casey argues that there must be some actual loss, even if it is reasonably determinable, before the gain figure can be used (Amended Motion, Doc. No. 65, PageID 278), citing *United States v. Khan,* 969 F.2d 218, 221 (6th Cir. 1992); *United States v. Watkins,* 994 F.2d 1192, 1196 (6th Cir. 1993); *United States v. Fleming*, 128 F.3d 285, 288 (6th Cir. 1997); as well as cases from Second, Fourth, and Seventh Circuits.

The fraudulent scheme in *Khan* involved claiming survivor benefits from the Social Security Administration based on Khan's faked death. The scheme succeeded, but no benefits were paid because Khan had not worked enough quarters to qualify. 969 F.2d at 220. The court held no increase in offense level is permitted "when no actual loss is possible." *Khan* was superseded in 2001 by a Sentencing Guideline amendment which specifically allowed for impossible losses. *United States v. Vysniauskas*, 593 Fed. Appx. 518 (6th Cir. 2015). Even if *Khan* were still good law, it would not apply here, because losses to the victims were not impossible, just did not occur in fact.

In *Watkins*, the defendant deposited worthless checks and argued the loss amount should be calculated based on the money she actually received rather than the face amount of the checks, $41,000 attempted versus $13,100 actually received. The Sixth Circuit construed narrowly the Guideline definition of intended or attempted loss, so *Watkins* has no application here. In addition, *Vysniauskas, supra,* found the Guideline superseded, as did *United States v. Newson*, 351 Fed. Appx. 986 (6th Cir. 2009).

Finally, in *United States v. Fleming*, 128 F.3d 285 (6th Cir. 1997), the Sixth Circuit upheld an enhancement based on intended loss. *Fleming* also is of no assistance to *Casey*. Thus none of the Sixth Circuit case law cited by Casey supports his position and his trial attorney was not deficient in performance for failing to advise him of these cases.

The lack of any clear law supporting Casey's position must be combined with his admission of the truth of the statement made by the IRS agent during the plea colloquy that he had received over $300,000 in cash and credit card receipts from the businesses (Transcript, Doc. No. 71, PageID 348). Although the Probation Officer concluded that more than $400,000 was involved, Mr. Fleisher successfully persuaded the United States to agree to a figure under

6

$400,000, thereby reducing the offense level enhancement by two points.

**Conclusion**

Casey has not proved that his attorney provided him with incorrect legal advice and thereby provided ineffective assistance of trial counsel. His Amended Motion should be denied. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

June 3, 2015.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).